## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AB PAC
800 Maine Avenue SW, Suite 400
Washington, DC 20024,

                      Plaintiff,

              v.

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463,

                  Defendant.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Exactly 125 days ago, on March 17, 2022, AB PAC filed an administrative complaint with the Federal Election Commission (the "FEC" or "Commission"), alleging that former president Donald J. Trump violated the Federal Election Campaign Act of 1971, as amended (the "Act" or "FECA"), by making expenditures to advance his 2024 presidential campaign without filing a statement of candidacy with the FEC or disclosing those expenditures, and by accepting excessive contributions from his leadership PAC and a joint fundraising committee.

2.      The goal and effect of Mr. Trump's efforts is to disguise his run for the presidency, leaving AB PAC and voters in the dark about the contributions and expenditures he has received and made, and who is managing the campaign's finances—all information they are entitled to under FECA.

3.      Mr. Trump's acceptance of unlawful contributions also provides him with a competitive edge over the Democratic candidate in the 2024 presidential election, who Plaintiff plans to support through independent expenditures and other measures.

4.      To Plaintiff's knowledge, the Commission has taken no action on the March 2022 administrative complaint.

5.      Since Plaintiff filed the administrative complaint, two FEC quarterly reporting deadlines have passed. Had the FEC acted swiftly to enforce the law, Mr. Trump would have been required to register a principal campaign committee, disclosing information about his campaign personnel on FEC Form 1 (the Statement of Organization) and all of his campaign activities on detailed reports.

6.      But because the Commission's inaction has allowed Mr. Trump to continue violating the law, Plaintiff and the public have been denied valuable information. Furthermore, as each day passes that Mr. Trump is accepting excessive contributions, he sets himself up to have an unlawful head start against his opponents. Time is of the essence, and Plaintiff has no recourse but to ask this Court to require the FEC to remedy these continuing violations of the Act.

7.      Accordingly, Plaintiff hereby requests that this Court declare the FEC's failure to act contrary to law and order the FEC to conform within 30 days by acting on Plaintiff's administrative complaint. *See* 52 U.S.C. § 30109(a)(8)(A). If the FEC does not conform to such order within 30 days, FECA authorizes Plaintiff to commence a civil action, naming Mr. Trump as the defendant, to remedy the violations cited in the original complaint. *See id.* § 30109(a)(8)(C).

* * *

8.      This is an action against the FEC under 52 U.S.C. § 30109(a)(8)(A) based on unlawful agency delay. Plaintiff AB PAC seeks declaratory and injunctive relief to compel

Defendant FEC to take action on Plaintiff's administrative complaint, alleging violations of 52 U.S.C. §§ 30102(e)(1), 30104, and 30116(f)—provisions of the Act requiring candidates to register with the FEC, file disclosure reports, and adhere to the contribution limits.

9.      AB PAC filed an administrative complaint with the FEC on March 17, 2022, alleging that Donald Trump has violated the Act in several ways. He failed to file a statement of candidacy; he failed to file reports that would have disclosed expenditures made to support his presidential bid; and he has accepted excessive contributions from Save America—his leadership PAC—and Save America Joint Fundraising Committee—a joint fundraising committee in which Save America participates.

10.      Plaintiff's administrative complaint asked the Commission to (1) investigate the allegations against Mr. Trump, (2) compel disclosure of any expenditures made to support Mr. Trump's candidacy, (3) enjoin Mr. Trump from further violations, and (4) fine Mr. Trump the maximum amount permitted by law.

11.      FECA provides administrative complainants with a right of action against the FEC if the Commission fails to act on a complaint within 120 days. *Id.* § 30109(a)(8)(A).

12.      It has been 125 days since AB PAC filed its administrative complaint, and there is no indication that the FEC has taken any action on the matter.

13.      The Commission's failure to act injures the public by denying them information about the raising and spending of a candidate running for the highest office in the country and the identity of those responsible for managing his campaign. Moreover, the Commission's inaction is allowing one candidate to build a campaign with illegal funds, giving him a competitive advantage over his opponents. If the Commission does not put a stop to Mr. Trump's unlawful actions, it will only encourage other candidates to evade the requirements of the campaign finance system.

14.     The Commission's failure to act also causes direct and unique injuries to AB PAC by hindering its ability to educate the media and the public on Mr. Trump's activities. Because Mr. Trump has failed to file the required disclosure reports, AB PAC cannot review a single FEC report to determine Mr. Trump's spending in support of his campaign. In an effort to try to learn information about his spending, AB PAC gathers information piecemeal through an exhaustive review of journalistic accounts of Mr. Trump's whereabouts. It then cross-references information gleaned from those articles with Save America's FEC reports to try to parse out which expenditures were for the purpose of aiding Mr. Trump's election prospects, and which were for true leadership PAC activities. These efforts require the diversion of resources that AB PAC would otherwise use for mission-critical efforts. Had the FEC not failed to act and required Mr. Trump to comply with the Act, AB PAC would be able to obtain this information directly from reports that Mr. Trump is required to file with the FEC. Similarly, the FEC's failure to act has deprived AB PAC of information regarding the extent to which Mr. Trump's leadership PAC is funding his campaign, or whether or how much of Mr. Trump's personal resources are being used to further his campaign. AB PAC's efforts to learn this information yields incomplete results and diverts resources from AB PAC's mission of providing research to the media and the public on political races across the country. Similarly, AB PAC will have to spend more money on independent expenditures supporting the 2024 Democratic presidential nominee to counter Mr. Trump's unlawful head start on campaigning.

15.     Plaintiff therefore requests that this Court declare the FEC's failure to act on the administrative complaint contrary to law and order the Commission to conform with such declaration within 30 days.

## JURISDICTION AND VENUE

16.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1331.

17.    Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

18.    Plaintiff AB PAC is a hybrid political action committee ("PAC"), also known as a *Carey* PAC,[1] that is registered with the FEC.

19.    AB PAC supports Democratic candidates by conducting research on Republican candidates, which it releases to the public and the media. It also tracks Republican candidates to make the public aware of activities that would otherwise remain out of the media spotlight. Additionally, AB PAC makes independent expenditures in support of Democratic candidates. It spent tens of millions of dollars on communications opposing Mr. Trump and supporting then-candidate President Joseph Biden in the 2020 presidential election. In the 2024 presidential election, AB PAC again plans to make independent expenditures opposing the Republican nominee and supporting the Democratic nominee.

20.    As part of its efforts to educate the media and the public about candidates running for office, AB PAC studies candidates' FEC reports and organizational filings. It spends significant resources reviewing FEC reports, producing educational materials summarizing any discoveries related to campaign finance violations by Republican candidates, and pitching those materials to the press. AB PAC cannot effectively perform this key part of its mission in races in which a candidate is not filing reports, as required by federal law. AB PAC attempts to cope with this issue

---

[1] *Carey v. FEC*, No. 1:11-cv-00259-RMC (D.D.C. Aug. 19, 2011), ECF No. 28 (allowing PACs to maintain one account that is subject to the Act's contribution limits and one account that operates as a super PAC).

by adding more staff members and more staff time to races where there is no disclosure or improper disclosure, so that it can attempt to monitor press accounts and related PACs' reports for information about the offending candidate. However, it is impossible for AB PAC to be confident that it is producing comprehensive educational materials under these circumstances, and the burdensome process diverts resources away from AB PAC's other activities and limits the total number of races with which it can engage.

21.     In addition, when a candidate flouts the campaign finance laws to amass more money, that candidate has a greater ability to communicate with the public and promote their message. The opponent, who is abiding by FECA, is at a disadvantage. AB PAC will have to spend more money to level the playing field for a Democratic candidate who has fallen behind against a law-breaking Republican candidate—here, Mr. Trump. And if AB PAC is investing more resources on independent expenditures in one race, it cannot pay for as many independent expenditures in support of other Democratic candidates or spend on other activities that further its mission.

22.     Furthermore, when a Republican candidate violates campaign finance laws by accepting excessive contributions, that candidate gains a competitive advantage over AB PAC's preferred candidate, which harms AB PAC.

23.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## FACTUAL BACKGROUND

24.     Beginning as early as a year ago, in July 2021, Mr. Trump made public statements indicating that he has decided to run for president. On or about July 1, 2021, in response to Fox

News host Sean Hannity asking him whether he had decided to run again, Mr. Trump answered "Yes." Ex. 1 at 2.

25.     The following month, again speaking on television with Mr. Hannity about whether he would run in 2024, Mr. Trump stated, "So because the campaign finance laws are extremely complicated and unbelievably stupid, I'm actually not allowed to answer that question, can you believe that? I'd love to answer it. But let me put it this way; I think you'll be happy and I think a lot of our friends will be happy but I'm not actually allowed to answer it. Makes it very difficult if I do." *Id.* (quoting Greg Evans, *Trump Claims He is "Not Allowed to Say" if He Will be Running for President in 2024*, INDY100 (Aug. 18, 2021), https://www.indy100.com/news/trump-president-2024-interview-hannity-b1904465).

26.     In September 2021, when asked again if he was going to run for president, Mr. Trump replied, "Oh, that's a tough question. Actually for me it's an easy question. I mean, I know what I'm going to do, but we're not supposed to be talking about it yet from the standpoint of the campaign finance laws, which frankly are ridiculous." *Id.* (quoting C-SPAN, *Former President Trump Visits New York City on September 11* (Sept. 11, 2021), https://www.c-span.org/video/?c4976508/president-trump-visits-york-city-september-11).

27.     In January 2022, when Mr. Trump was introduced at his golf course as the 45th President of the United States, he responded, "the 45th and 47th." *Id.* at 2-3.

28.     While speaking at the Conservative Political Action Conference in February 2022, Mr. Trump said of a third presidential campaign: "We did it twice and we'll do it again . . . we're going to be doing it again a third time." He also referred to his wife as "the future first lady." *Id.* at 3.

29.     Even more recently, in July 2022, Mr. Trump told a reporter for *New York Magazine* asking about the election that "[in] my own mind, I've already made that decision, so nothing factors in anymore. In my own mind, I've already made that decision." He further stated that the "big decision will be whether I go before or after," clarifying later that he meant announce his run before or after the midterms.[2]

30.     Since the time Mr. Trump first indicated publicly that he had decided to run for president, his leadership PAC, Save America (which is run by his former campaign manager), has spent significant sums to promote his candidacy and influence the outcome of the 2024 presidential election. For example, Save America has paid for travel, events, rallies featuring Mr. Trump, and digital advertisements critical of Mr. Trump's presumptive opponent President Joseph Biden, and it has made consulting payments to Mr. Trump's former campaign staffers. Based on Save America's FEC reports, these expenditures have far exceeded $5,000. *Id.* at 3-4. They total in the millions. *Id.* at 7. At times, Save America has spent more than $100,000 per week on Facebook advertisements alone. *Id.* at 8. The full extent of the PAC's election spending is impossible to know because Save America's reports do not classify any expenditures as in-kind contributions to Mr. Trump.

31.     Recent reporting also reveals that, in June and July 2022, Save America paid for "intimate dinners" for Mr. Trump to talk about his election plans with his top donors and supporters. Conversation centered on whether Mr. Trump should announce his campaign before or after the midterm elections and whether his campaign should advance his claims that the 2020

---

[2] Olivia Nuzzi, *Donald Trump on 2024: 'I've Already Made that Decision,'* N.Y. Mag. (July 14, 2022), https://nymag.com/intelligencer/article/donald-trump-2024-decision.html.

election was stolen.[3] Under federal campaign finance law, these expenses would also count toward the total Save America has paid to promote Mr. Trump's election. *See* 52 U.S.C. § 30116(a)(7)(B)(i).

32.     Save America Joint Fundraising Committee—a joint fundraising committee consisting of Save America and another Trump-aligned PAC—has likewise influenced Mr. Trump's election by paying for nearly $100,000 worth of Facebook advertisements, many of which promoted Mr. Trump's rallies. Ex. 1 at 6-7. Of course, none of these have been disclosed as in-kind contributions to Mr. Trump, either.

33.     To date, Mr. Trump has not filed a statement of candidacy, registered a principal campaign committee, filed any disclosure reports, or reimbursed his leadership PAC for paying campaign expenses.

## LEGAL BACKGROUND

34.     The Act defines a "candidate" as an "individual who seeks nomination for election, or election, to Federal office." 52 U.S.C. § 30101(2); *see also* 11 C.F.R. § 100.3. A person seeks nomination or election to federal office if they have either "received contributions in excess of $5,000 or [ ] made expenditures aggregating in excess of $5,000," or have given "consent to another person to receive contributions or make expenditures on [their] behalf and such person has received such contributions aggregating in excess of $5,000 or has made such expenditures aggregating in excess of $5,000." *Id.*

35.     For a payment to be an "expenditure," it must be made "for the purpose of influencing [an] election." *Id*. § 30101(9)(A)(i); 11 C.F.R. § 100.111(a). Accordingly, if a person

---

[3] Alex Isenstadt, *Trump Discussing 2024 Plans at Secret Donor Dinners*, Politico (July 13, 2022), https://www.politico.com/news/2022/07/13/trump-2024-secret-donor-dinners-00045665.

is spending money only to determine *whether* they should run for office, those disbursements are not "expenditures." The Commission's regulations refer to activities aimed at assessing the viability of a candidacy as "testing-the-waters" expenses. *See* 11 C.F.R. § 100.131. Testing-the-waters payments must be made for the purpose of determining whether to run for office and include disbursements for items like polling, phone calls, and travel to assess public support. *Id.* § 100.131(a).

36.     Once a person has decided to run for office, they can no longer use the testing-the-waters exception, and their previous testing-the-waters spending becomes "expenditures" within the meaning of the Act. *Id.* § 100.131(b). This means that if a person has spent more than $5,000 to test the waters, and then decides to run for office, they immediately become a "candidate" and must report their testing-the-waters expenditures. *Id.* § 100.131(a); Fed. Elections Comm'n, AO 2015-09 (Senate Majority PAC & House Majority PAC) at 5 (Nov. 13, 2015) [hereinafter AO 2015-09].

37.     The FEC has opined that even when an individual makes a private determination to run for office, and even if that decision is not communicated to anyone else, they can no longer use the testing-the-waters exception. AO 2015-09 at 5. Of course, once a candidate publicly states an intent to run or makes reference to a candidacy, that also makes them ineligible to use the testing-the-waters allowance. *See* 11 C.F.R. § 100.131(b)(3).

38.     When a person becomes a candidate for federal office, they must file a statement of candidacy (FEC Form 2) with the FEC within fifteen days of meeting the definition of "candidate." 52 U.S.C. §§ 30102(e)(1), (g); 11 C.F.R. § 101.1(a). On the statement of candidacy, the candidate must designate a principal campaign committee. 11 C.F.R. § 101.1(a). The principal

campaign committee is the committee authorized to accept contributions and make expenditures on behalf of the candidate. 52 U.S.C. §§ 30101(5)-(6); 11 C.F.R. §§ 100.5(e)(1), (f)(1).

39.     The principal campaign committee must file a statement of organization (FEC Form 1), listing the address of the campaign, any committees affiliated with the campaign, the campaign's treasurer and custodian of records, and which bank the campaign uses, among other information. 11 C.F.R. § 102.2(a).

40.     The Act requires the principal campaign committee of a presential candidate to file quarterly reports in years in which their election is not on the general election ballot, and then file monthly reports and pre- and post-election reports during the election year. 52 U.S.C. § 30104(a)(3); 11 C.F.R. § 104.5(b). The reports must disclose all contributions received and expenditures made during the reporting period. This includes in-kind contributions from other PACs and any personal spending of the candidate to advance their campaign. 52 U.S.C. § 30104(b); 11 C.F.R. § 104.3.

41.     A candidate may only accept $5,000 per election from a PAC, including their own leadership PAC. 52 U.S.C. § 30116(a)(2)(A). A leadership PAC is a political committee "directly or indirectly established, financed, maintained or controlled by a candidate for Federal office or an individual holding Federal office but which is not an authorized committee of the candidate." 11 C.F.R. § 100.5(e)(6).

42.     FECA allows any person or entity to file an administrative complaint with the FEC alleging that a violation of the federal campaign finance laws has occurred. 52 U.S.C. § 30109(a)(1).

43.     If the FEC does not act on a complaint within 120 days, the complainant has a right of action against the FEC. *Id.* § 30109(a)(8)(A).

11

44.     If the Court declares that the FEC's failure to act on an administrative complaint is contrary to law, it may order the FEC to conform within 30 days by acting on the administrative complaint. *Id.* § 30109(a)(8)(C). If the FEC does not rule on the complaint within 30 days, the complainant may commence an action against the administrative respondent in federal court to remedy the FECA violations. *Id.*

### ADMINISTRATIVE PROCEEDINGS

45.     On March 17, 2022, AB PAC, through its president Jessica Floyd, filed an administrative complaint with the FEC, naming Mr. Trump as the Respondent and presenting those of the above facts that were available to Plaintiff at the time. *See generally* Ex. 1.

46.     The administrative complaint argued that Mr. Trump reached a private decision to run for re-election by July 2021 and then repeatedly confirmed his intent. It pointed out that his statements about running for president were even firmer than those found by the FEC in past matters to indicate that an individual had made up their mind to run for office. *Id.* at 7 (citing Factual and Legal Analysis ("F&LA") at 10, FEC Matter Under Review ("MUR") 6999 (Larsen) (concluding that an individual's statements that "it's time to do it again" and "we'll win this time" indicated a decision); F&LA at 8, FEC MUR 6449 (Bruning) (concluding that an individual's statements such as "I want to run" and "I'm ready to run" indicated a decision)).

47.     The administrative complaint alleged that once Mr. Trump had decided to run for election, he could not avail himself of the testing-the-waters exemption. At the time he made his decision, the money that Save America and Save America Joint Fundraising Committee paid to promote Mr. Trump and attack President Biden, to the extent they could even be classified as testing-the-waters expenses in the first place, unquestionably became "expenditures." All amounts spent for those purposes after the decision were also expenditures. *Id.* at 8.

48.     Further, by definition, the complaint said, Mr. Trump had consented to these expenditures. *Id.* (stating that because Save America is Mr. Trump's leadership PAC, Mr. Trump "sponsors" the PAC and its joint fundraising efforts). Having decided to run for office and having consented to over $5,000 of expenditures, Mr. Trump was a "candidate" long before Plaintiff filed the administrative complaint. *Id.* at 9. Thus, the administrative complaint asserted that Mr. Trump violated FECA by failing to file a statement of candidacy, which would have designated a principal campaign committee, and file disclosure reports, as required by 52 U.S.C. §§ 30102(e)(1) and 30104. Ex. 1 at 9-10.

49.     Additionally, the administrative complaint argued that Mr. Trump has accepted excessive contributions from his leadership PAC and a joint fundraising committee, because they spent more than $5,000 on Mr. Trump's campaign between unreimbursed testing-the-waters expenses and expenses incurred to promote Mr. Trump's election after he passed the candidacy threshold. The administrative complaint alleged that this violates 52 U.S.C. § 30116(f). Ex. 1 at 9.

50.     The FEC responded to the complaint with an acknowledgement letter dated March 23, 2022, informing AB PAC that the proceeding would be designated MUR 7968. Ex. 2.

51.     Upon information and belief, the FEC has failed to act on Plaintiff's administrative complaint for 125 days, exceeding the 120-day statutory response period.

## CAUSE OF ACTION

### Count I: 52 U.S.C. § 30109(a)(8)(A)

52.     Plaintiff repeats and realleges paragraphs 1-51 as if set forth fully herein.

53.     Defendant's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the

Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests this Court:

(1)     Declare that the FEC's failure to act on Plaintiff's administrative complaint was contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3) Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4) Grant such other relief as the Court may deem just and proper.

Dated: July 20, 2022                                    Respectfully submitted,

*/s/ Aria C. Branch*
Aria C. Branch (D.C. Bar No. 1014541)
Ezra W. Reese (D.C. Bar No. 487760)
Abranch@elias.law
Ereese@elias.law
ELIAS LAW GROUP LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
Tel: (202) 968-4490
Fac: (202) 968-4498

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff AB PAC certifies, pursuant to Federal Rule of Civil Procedure 7.1, that:

1.      AB PAC is a District of Columbia nonstock corporation that has no parent corporation.

2.      No Publicly traded corporation owns ten percent or more of AB PAC's stock.


*/s/ Aria C. Branch*
Aria C. Branch

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing complaint will be served as soon as the summons is available

on the following persons by certified mail, return receipt requested, and that a courtesy copy will

be emailed to Kevin Deeley, FEC Associate General Counsel for Litigation, at kdeeley@fec.gov:

Office of General Counsel
Federal Election Commission
1050 First Street NE
Washington, DC 20463

Attorney General of the United States Merrick Garland
c/o Assistant Attorney General for Administration
Justice Management Division
950 Pennsylvania Avenue NW
Room 1111
Washington, DC 20530

And

Matthew M. Graves
United States Attorney for the District of Columbia
Civil Process Clerk
555 4th Street NW
Washington, DC 20001

*/s/ Aria C. Branch*
Aria C. Branch
