UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AB PAC,<br><br>           Plaintiff,<br><br>      v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>           Defendant. | Civ. No. 22-2139 (TJK)<br><br>MEMORANDUM IN SUPPORT OF<br>MOTION TO DISMISS |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Lisa J. Stevenson
(D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

September 26, 2022

Jacob Siler (D.C. Bar No. 1003383)
Assistant General Counsel
jsiler@fec.gov

Shaina Ward (D.C. Bar No. 1002801)
Attorney
sward@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................1

I.    THE FEC AND FECA'S ADMINISTRATIVE
ENFORCEMENT PROCESS............................................................................................1

II.   ADMINISTRATIVE PROCEEDINGS RELATED
TO PLAINTIFF'S ADMINISTRATIVE COMPLAINT ..............................................3

ARGUMENT ......................................................................................................................5

I.    AB PAC LACKS ARTICLE III STANDING TO COMPEL
THE COMMISSION TO ACT ON ITS EXCESSIVE
CONTRIBUTION CLAIM................................................................................................5

    A.    Standard of Review................................................................................................5

    B.    AB PAC Does Not Have Standing to Ask This Court to
Compel the Commission to Enforce a Contribution Limit
Against a Third Party .............................................................................................7

    C.    AB PAC Lacks Standing to Pursue Its Claim of Excessive
Contributions Because it is Not a Competitor Candidate ..................................8

CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

*Cases*

*Gottlieb v. FEC*, 143 F.3d 618 (D.C. Cir. 1998) ............................................................................ 9

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ........................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 9

*Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) ................................................................ 6

*Campaign Legal Ctr. v. FEC*, 860 F. App'x 1 (D.C. Cir. 2021) .................................................... 7

*Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011) ................................................................. 4, 10

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  267 F. Supp. 3d 50 (D.D.C. 2017) ............................................................................................ 7-8

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ............................................................... 7

*Davis v. FEC*, 554 U.S. 724 (2008) ......................................................................................... 6, 10

*Fulani v. Brady,* 935 F.2d 1324 (D.C. Cir. 1991) ....................................................................... 10

*Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*,
  185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................................................ 6

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ....................................................................... 5

*Hassan v. FEC*, 893 F. Supp. 2d 248 (D.D.C. 2012) .................................................................... 9

*In re U.S. Catholic Confer.*
  885 F.2d 1020 (2d Cir. 1989) ................................................................................................ 9-10

*Int'l Bhd. of Teamsters v. TSA*, 429 F.3d. 1130 (D.C. Cir. 2005) ................................................. 7

*Jerome Stevens Pharms., Inc. v. FDA.*, 402 F.3d 1249 (D.C. Cir. 2005) ...................................... 5

*Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992) ............................................................................ 6

*M.J. v. District of Columbia*, 401 F. Supp. 3d 1 (D.D.C. 2019) ................................................... 5

*McConnell v. FEC*, 540 U.S. 93 (2003) ...................................................................................... 10

*Nat'l Ass'n for Latino Cmty. Asset Builders v. Consumer Fin. Prot. Bureau*,
  581 F. Supp. 3d 101 (D.D.C. 2022) ............................................................................... 6

*Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005) ......................................................................... 9

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ........................................................................................................ 6

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................................ 7

*Wertheimer v. FEC*, 268 F.3d 1070 (D.C. Cir. 2001) ............................................................ 8

**Statutes**

52 U.S.C. § 30102(e)(1) ........................................................................................................ 4

52 U.S.C. § 30104 ................................................................................................................. 4

52 U.S.C. § 30106 ................................................................................................................. 1

52 U.S.C. § 30106(b)(1) .................................................................................................... 1, 2

52 U.S.C. § 30106(c) ............................................................................................................ 2

52 U.S.C. § 30107 ................................................................................................................. 1

52 U.S.C. § 30107(a)(8) ........................................................................................................ 1

52 U.S.C. § 30109(a)(1) ........................................................................................................ 2

52 U.S.C. § 30109(a)(2) ........................................................................................................ 2

52 U.S.C. § 30109(a)(4)(A)(i) ............................................................................................... 2

52 U.S.C. § 30109(a)(6) ........................................................................................................ 2

52 U.S.C. § 30109(a)(6)(A) .................................................................................................. 2

52 U.S.C. § 30109(a)(8) ........................................................................................................ 1

52 U.S.C. § 30109(a)(8)(A) .......................................................................................... 3, 5, 7

52 U.S.C. § 30109(a)(8)(C) .................................................................................................. 3

52 U.S.C. § 30109(a)(12)(A) ................................................................................................ 3

iv

52 U.S.C. § 30109(a)(12)(B) ................................................................................................. 3

52 U.S.C. § 30111(a)(8) .......................................................................................................... 1

52 U.S.C. § 30116(f) ......................................................................................................... 5, 11

**Rules and Regulations**

11 C.F.R. § 111.4 .................................................................................................................... 2

11 C.F.R. § 111.21 .................................................................................................................. 3

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 5, 6

Plaintiff AB PAC has filed this action pursuant to 52 U.S.C. § 30109(a)(8), alleging that the Federal Election Commission ("Commission" or "FEC") has failed to timely act on its administrative complaint. The underlying administrative complaint alleges that former president Donald J. Trump violated the Federal Election Campaign Act of 1971 ("FECA"), by making expenditures to advance his 2024 presidential campaign without filing a statement of candidacy with the FEC or disclosing those expenditures, and by accepting excessive contributions from his leadership PAC and a joint fundraising committee. As detailed below, however, to the extent that plaintiff's administrative complaint alleges that Trump has accepted excessive contributions, that portion of the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), because plaintiff has not established standing to obtain any relief on this claim. Even were the Commission to pursue enforcement of the claim that Trump has accepted excessive contributions, as AB PAC requests, AB PAC would not obtain any additional information to which it claims it is entitled. Nor does AB PAC suffer a competitive disadvantage from the Commission's alleged inaction on its administrative complaint because AB PAC does not itself seek elective office or nominate candidates for election. AB PAC's allegations as to this claim amount to dissatisfaction with a civil law enforcement agency's level of enforcement against a third party and are therefore too remote and speculative to support standing under Article III.

## BACKGROUND

**I.    THE FEC AND FECA'S ADMINISTRATIVE ENFORCEMENT PROCESS**

The FEC is a six-member, independent agency of the United States government with "exclusive jurisdiction" to administer, interpret, and civilly enforce FECA. *See generally* 52 U.S.C. §§ 30106, 30107. Congress authorized the Commission to "formulate policy" with respect to FECA, *id.* § 30106(b)(1); "to make, amend, and repeal such rules . . . as are necessary to carry out the provisions of [FECA]," *id.* §§ 30107(a)(8), 30111(a)(8); and to investigate

possible violations of the Act, *id.* § 30109(a)(1)-(2).  The Commission has exclusive jurisdiction to initiate civil enforcement actions for violations of the Act in the United States district courts.  *Id.* §§ 30106(b)(1), 30109(a)(6).

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the Act.  *Id.* § 30109(a)(1); *see also* 11 C.F.R. § 111.4.  After reviewing the complaint and any response filed by the respondent, the Commission considers whether there is "reason to believe" that FECA has been violated.  52 U.S.C. § 30109(a)(2).  If at least four of the FEC's six Commissioners vote to find such reason to believe, the Commission may investigate the alleged violation; otherwise, the Commission dismisses the administrative complaint.  *Id.* §§ 30106(c), 30109(a)(2).

If the Commission votes to proceed with an investigation, it then must determine whether there is "probable cause" to believe that FECA has been violated.  *Id.* § 30109(a)(4)(A)(i).  Like a reason-to-believe determination, a determination to find probable cause to believe that a violation of FECA has occurred requires an affirmative vote of at least four Commissioners.  *Id.* §§ 30106(c), 30109(a)(4)(A)(i).  If the Commission so votes, it is statutorily required to attempt to remedy the violation informally and attempt to reach a conciliation agreement with the respondent.  *Id.*  Entering into a conciliation agreement requires an affirmative vote of at least four Commissioners and such an agreement, unless violated, operates as a bar to any further action by the Commission related to the violation underlying that agreement.  *Id.*  If the Commission is unable to reach a conciliation agreement, FECA authorizes the agency to institute a *de novo* civil enforcement action in federal district court.  *Id.* § 30109(a)(6)(A).  The institution of a civil action under section 30109(a)(6)(A) requires an affirmative vote of at least four Commissioners.  *Id.* § 30106(c).

FEC administrative enforcement matters are required by FECA to be kept confidential until the administrative process is complete. 52 U.S.C. § 30109(a)(12)(A) ("Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made."); 11 C.F.R. § 111.21. FECA further provides for the imposition of a fine on "[a]ny member or employee of the Commission, or any other person, who violates" section 30109(a)(12)(A). 52 U.S.C. § 30109(a)(12)(B).

If, at any point in the administrative process, the Commission determines that no violation has occurred or decides to dismiss the administrative complaint for some other reason, FECA provides the complainant with a narrow cause of action for judicial review of the Commission's dismissal decision. *See id.* § 30109(a)(8)(A) (detailing the procedure for seeking judicial review of an administrative dismissal and the scope of such review). That statutory provision also allows a party who has filed an administrative complaint with the Commission, after 120 days, to bring a civil action in this District alleging that the Commission has "fail[ed] to act" on its complaint. *Id.* § 30109(a)(8)(A).

FECA expressly limits the scope of relief available to a plaintiff challenging an FEC dismissal decision or alleging that the Commission has failed to act on an administrative complaint. The reviewing court may only (a) declare that the Commission's failure to act or dismissal was "contrary to law" and (b) order the Commission to "conform with" the court's declaration within 30 days. 52 U.S.C. § 30109(a)(8)(C).

## II. ADMINISTRATIVE PROCEEDINGS RELATED TO PLAINTIFF'S ADMINISTRATIVE COMPLAINT

Plaintiff AB PAC alleges that it is a hybrid political action committee ("PAC") that is registered with the FEC. Pl.'s Compl. for Declaratory and Injunctive Relief ("Compl.") ¶ 18

(Docket No. 1).)¹ AB PAC alleges that it supports Democratic candidates by conducting research on Republican candidates, which it releases to the public and the media. (*Id.* ¶ 19.) Plaintiff alleges that it tracks Republican candidates and makes independent expenditures in support of Democratic candidates. (*Id.*) Plaintiff further alleges that it spent tens of millions of dollars on communications opposing Trump and supporting then-candidate President Joseph Biden in the 2020 presidential election. (*Id.*) Additionally, plaintiff alleges that in the 2024 presidential election, AB PAC again plans to make independent expenditures opposing the Republican nominee and supporting the Democratic nominee. (*Id.*) AB PAC does not allege that it nominates candidates for federal office, and as an artificial entity, it is not itself eligible to stand for election.

Plaintiff's court complaint alleges that it filed an administrative complaint with the FEC on March 17, 2022. (*Id.* ¶ 1.) As alleged here, plaintiff's administrative complaint asserted two categories of potential FECA violations that it asked the Commission to investigate. (*Id.* ¶¶ 48-49.) The first category alleges that Trump is a "candidate" for the president in the 2024 election cycle, and he has therefore violated FECA's requirement that candidates for federal office file a statement of candidate and campaign finance disclosure reports identifying his contributions and expenditures. (*See id.* ¶ 48 (citing 52 U.S.C. §§ 30102(e)(1) and 30104).) The second category alleges that Trump has accepted excessive contributions above FECA's dollar amount limitations for his purported 2024 presidential campaign from an entity called "Save America" — his leadership PAC — and a joint fundraising committee because those entities spent more than

---

¹ A "hybrid PAC" is a committee that accepts funds and makes contributions to candidates subject to FECA's amount and source limitations but that also maintains a separate bank account to deposit and spend unlimited funds on independent expenditures and from sources such as labor unions or corporations that would otherwise be barred from being contributed to candidates. *See Carey v. FEC*, 791 F. Supp. 2d 121, 131-32 (D.D.C. 2011).

$5,000 on alleged in-kind contributions.  (*Id.* ¶ 49 (citing 52 U.S.C. § 30116(f).)  Plaintiff's administrative complaint requests that the Commission "(1) investigate the allegations against Mr. Trump, (2) compel disclosure of any expenditures made to support Mr. Trump's candidacy, (3) enjoin Mr. Trump from further violations, and (4) fine Mr. Trump the maximum amount permitted by law."  (*Id.* ¶ 10.)

On July 20, 2022, plaintiff filed this judicial action against the Commission alleging that the Commission has failed to act on its administrative complaint.  (*See id.* ¶ 1.)  Plaintiff seeks a declaration "that the FEC's failure to act" is "contrary to law" under 52 U.S.C. § 30109(a)(8)(A) & (C).  (Compl. ¶ 7.)  Plaintiff also seeks "injunctive and declaratory relief" to compel the Commission "to act on Plaintiff's administrative complaint" within 30 days.  (*Id.*; *see also* Compl. Requested Relief ¶¶ 1-4.)

## ARGUMENT

I. **AB PAC LACKS ARTICLE III STANDING TO COMPEL THE COMMISSION TO ACT ON ITS EXCESSIVE CONTRIBUTION CLAIM**

   A. **Standard of Review**

A plaintiff bears the burden of demonstrating that it has properly invoked this Court's subject-matter jurisdiction.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1), as lack of standing is a "defect in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *M.J. v. District of Columbia*, 401 F. Supp. 3d 1, 7-8 (D.D.C. 2019).  When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true.  *See Jerome Stevens Pharms., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer

scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal quotation marks omitted); *see also Nat'l Ass'n for Latino Cmty. Asset Builders v. Consumer Fin. Prot. Bureau*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (same).  As the party bringing suit, AB PAC bears the burden of establishing standing. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017).

To have Article III standing a plaintiff must establish: (1) it has "suffered an 'injury in fact[,]" which the Supreme Court defines as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not [merely] conjectural or hypothetical," *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted); (2) that there is a "causal connection between the injury and the conduct complained of[,]" which requires the injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," *id.* (internal quotation marks and alterations omitted); and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted).  These three components of the Article III "case or controversy" requirement are designed to ensure that the "plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction and to justify [the] exercise of the court's remedial powers on his behalf." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (internal quotation marks omitted).  Moreover, "standing is not dispensed in gross" and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks and alterations omitted).

Where a plaintiff asserts a procedural right, he must show that he has suffered a personal and particularized injury that impairs one of his concrete interests. *Int'l Bhd. of Teamsters v. TSA*, 429 F.3d. 1130, 1135 (D.C. Cir. 2005). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right *in vacuo* — is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). In the context of a failure-to-act claim pursuant to 52 U.S.C. § 30109(a)(8)(A), it is not enough for a plaintiff to allege that the Commission has not acted on an administrative complaint. That is so because section 30109(a)(8)(A) "does not confer standing; it confers a right to sue upon parties who otherwise already have standing." *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997) (per curiam). Rather, a plaintiff bringing a failure-to-act claim under section 30109(a)(8)(A) must allege that it suffered some additional concrete injury beyond the mere alleged agency inaction. *See Campaign Legal Ctr. v. FEC*, 860 F. App'x 1, 4-5 (D.C. Cir. 2021) (per curiam).

### B. AB PAC Does Not Have Standing to Ask This Court to Compel the Commission to Enforce a Contribution Limit Against a Third Party

As an initial matter, plaintiff cannot establish Article III standing on its excessive contribution claim because the only purported injury it has alleged is a generalized desire to see the FEC apply the law against third parties. AB PAC fails to show that it has suffered any concrete or particularized injury from Trump's allegedly unlawful acceptance of excessive in-kind contributions. As to this portion of its complaint, AB PAC does not allege that the Commission's lack of administrative action causes it to be deprived of information to which it believes it is entitled. Nor could it, because even if the Commission brought a successful enforcement action based on AB PAC's allegations that Trump had accepted excessive contributions, no additional disclosure would result. *See Citizens for Resp. & Ethics in Wash. v.*

7

*FEC*, 267 F. Supp. 3d 50, 53 (D.D.C. 2017) ("Plaintiffs have alleged no facts that they were harmed by the money spent by Murray Energy PAC or by the direct donations that Murray Energy employees gave. The particularized harm they plead is not about the money in politics but about the lack of information about that money.").

The relief AB PAC seeks is for this Court to compel the FEC to enforce a contribution limit against a political candidate it opposes. Such concerns cannot be the basis for standing because there is no "justiciable interest in having the Executive Branch act in a lawful manner." *Common Cause*, 108 F.3d at 419. AB PAC has no Article III right to seek "a legal conclusion that carries certain law enforcement consequences" for others. *Wertheimer v. FEC,* 268 F.3d 1070, 1075 (D.C. Cir. 2001). "While 'Congress can create a legal right . . . the interference with which will create an Article III injury,' . . . Congress cannot . . . create standing by conferring 'upon *all* persons . . . an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law.'" *Common Cause,* 108 F.3d at 418 (quoting *Lujan*, 504 U.S. at 573) (emphasis in original, internal citation omitted).

### C. AB PAC Lacks Standing to Pursue Its Claim of Excessive Contributions Because it is Not a Competitor Candidate

The only potential injury stemming from the Commission's alleged inaction as to the excessive contribution claim AB PAC identifies is that Trump's "acceptance of unlawful contributions . . . provides him with a competitive edge over the Democratic candidate in the 2024 presidential election." (Compl. ¶ 3; *see also id.* ¶ 6 (alleging Trump has "an unlawful head start against his opponents"); *id.* ¶ 13 (alleging that "the Commission's inaction is allowing one candidate to build a campaign with illegal funds, giving him a competitive advantage over his opponents"); *id.* ¶ 22.) Even assuming it were the case that a Democratic candidate were injured

by the Commission's alleged inaction, that would not support *AB PAC's* standing because it is not a candidate.

The D.C. Circuit has recognized that the "illegal structuring of a competitive environment" is an injury-in-fact that competitors in that environment have standing to redress in federal court. *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005) (finding standing for members of Congress who intended to run for reelection and were challenging FEC regulations applicable to candidates and political parties). But the corollary to that doctrine requires that the plaintiff actually compete with the person receiving the allegedly illegal benefit. *See Hassan v. FEC*, 893 F. Supp. 2d 248, 254 n.6 (D.D.C. 2012) (distinguishing cases in which "already established candidates have been found to have standing to challenge an 'assertedly illegal benefit' being conferred *upon someone with whom those candidates compete*" (emphasis added)).

Plaintiff's allegation that it is injured because a hypothetical candidate it intends to support will be at a fundraising disadvantage (*see, e.g.*, Compl. ¶ 3) does not establish competitor standing for AB PAC.[2] In *Gottlieb v. FEC*, the D.C. Circuit concluded that a PAC lacked standing as a competitor to challenge the use of public matching funds by a candidate it opposed "because it was never in a position to receive matching funds itself." 143 F.3d 618, 621 (D.C. Cir. 1998). "*Only another candidate* could make such a claim." *Id.* (emphasis added). As the *Gottlieb* court reasoned, competitor standing "require(s) that the plaintiff 'show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit.'" *Id.* (quoting *In re U.S. Catholic Confer.*, 885 F.2d

---

[2]   Plaintiff does not specifically connect the competitive disadvantage a hypothetical candidate would face to its own injuries, other than to say that such a disadvantage "harms AB PAC." (Compl. ¶ 22.) That allegation is conclusory and therefore "is not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

1020, 1029 (2d Cir. 1989)). Similarly, in *Fulani v. Brady*, the court concluded that a minor party candidate for President could not establish competitor standing to challenge the tax-exempt status of the sponsor of the Presidential debates, which had excluded her from participating, because she was not in competition for that benefit. *See* 935 F.2d 1324, 1327-28 (D.C. Cir. 1991). As these cases demonstrate, it is not enough for AB PAC to claim that a candidate it supports will be at a disadvantage in raising money. AB PAC must also allege that *it* is denied the benefit of the purported nonenforcement of contribution limits that Trump is receiving.

Plaintiff cannot make that showing because it is not among Trump's competitors in any election. AB PAC cannot allege, for example, that it must comply with a contribution limitation that the Commission is not enforcing against Trump. As a hybrid PAC, plaintiff is permitted to raise contributions into a separate account for independent expenditures which are not subject to the amount and source limitations FECA places on candidates. *See Carey v. FEC*, 791 F. Supp. 2d 121, 131-32 (D.D.C. 2011). Absent being denied a benefit a similarly situated party received, moreover, AB PAC is not injured merely because Trump raises and spends more money than plaintiff would like. *Cf. Davis*, 554 U.S. at 741-42; *McConnell v. FEC*, 540 U.S. 93, 227-28 (2003) (holding that plaintiff lacked competitive injury because they did "'not wish to solicit or accept large campaign contributions permitted by'" federal law).

To be sure, AB PAC alleges that it is an ideological opponent to Trump and desires a different candidate to be elected president in 2024. But a political action committee like AB PAC lacks competitor standing to challenge a benefit given to a candidate if that benefit is granted solely to candidates, because they are not competitors in the same "arena." *See Gottlieb*, 143 F.3d at 621. It therefore lacks competitor standing with regard to the excessive contribution claims it alleges it made to the Commission.

In sum, AB PAC's excessive contribution claim is insufficient to support standing because it does not compete with Trump. AB PAC is not a rival candidate. And its complaints about a potential agency enforcement action on this claim are too remote and speculative to support standing. Accordingly, the FEC's Motion to dismiss this portion of plaintiff's judicial complaint should be granted.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss plaintiff's complaint to the extent it seeks an order compelling the Commission to act on any administrative complaint alleging Trump accepted excessive contributions in violation of 52 U.S.C. § 30116(f).

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

September 26, 2022

Jacob Siler (D.C. Bar No. 1003383)
Assistant General Counsel
jsiler@fec.gov

/s/ *Shaina Ward*
Shaina Ward (D.C. Bar No. 1002801)
Attorney
sward@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650