UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AB PAC,<br><br>      *Plaintiff*,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>      *Defendant*. | Civil Action No. 22-2139 (TJK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff AB PAC filed an administrative complaint with the Federal Election Commission, or the FEC, alleging that former President Donald J. Trump violated campaign-finance laws related to his potential bid for the 2024 presidential election. The administrative complaint alleged both that Trump failed to properly disclose certain expenditures and that he accepted excessive contributions. When the FEC failed to act on the administrative complaint, AB PAC sued the FEC, seeking to challenge that inaction and lay the groundwork to pursue its own suit. The FEC moves to dismiss this suit's complaint in part—to the extent that it challenges the FEC's failure to act on the excessive-contributions claim—because it argues that AB PAC lacks an injury to establish standing. The Court agrees, and so it will grant the FEC's motion.

**I.   Background**

According to the amended complaint, AB PAC is a political action committee ("PAC") registered with the FEC. ECF No. 14 ("Am. Compl.") ¶ 17. AB PAC raises, donates, and spends money in support of Democratic candidates and also tracks and opposes Republican candidates and PACs. *Id.* ¶ 18. AB PAC plans to participate in the 2024 presidential election by supporting the eventual Democratic nominee. *Id.*

In March 2022, AB PAC filed an administrative complaint (the "FEC complaint") against Trump with the FEC. Am. Compl. ¶ 49; *see also* ECF No. 14-2 ("FEC Compl.") at 1–11. In it, AB PAC alleged that he violated campaign-finance laws in two discrete ways. Am. Compl. ¶¶ 52–53; *see also* FEC Compl. at 8–11. First, AB PAC alleged that Trump violated the Federal Election Campaign Act of 1971 ("FECA") by making expenditures to advance his 2024 presidential campaign without filing a statement of candidacy with the FEC and by not disclosing those expenditures (the "disclosure claim"). Am. Compl. ¶¶ 1, 52; *see also* FEC Compl. at 8–10. Second, AB PAC alleged that Trump violated FECA by accepting excessive contributions from his leadership PAC and joint fundraising committee (the "excessive-contributions claim"). Am. Compl. ¶¶ 1, 53; FEC Compl. at 10–11. AB PAC alleges that, as of the filing of its amended complaint in this suit, the FEC had failed to act on the administrative complaint for 211 days. Am. Compl. ¶¶ 12, 55.

As a result, AB PAC sued the FEC for its alleged failure to act on the FEC complaint under 52 U.S.C. § 30109(a)(8)(A). *See* Am. Compl. ¶¶ 8, 47; *see also* 52 U.S.C. § 30109(a)(8)(A) (allowing a "party aggrieved . . . by a failure of the [FEC] to act on [an administrative] complaint during the 120-day period beginning on the date the complaint is filed" to "file a petition with the United States District Court for the District of Columbia"). AB PAC alleges that the FEC's failure to act has injured AB PAC by denying it information about Trump's political fundraising and spending, and by providing AB PAC's political opponents, including Trump, a competitive advantage over it. Am. Compl. ¶¶ 2–3, 6, 13. These injuries, AB PAC further alleges, hinder its "ability to educate the media and the public on Mr. Trump's activities." *Id.* ¶ 14. In its prayer for relief, AB PAC asks that, among other things, the Court "[d]eclare that the FEC's failure to act on Plaintiff's [FEC complaint] was contrary to law under 52 U.S.C. § 30109(a)(8)(A)" and then

2

"[o]rder the FEC to conform with [that] declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C)." Am. Compl. at 16.

The FEC moves to partially dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1). The FEC argues that AB PAC lacks standing to challenge the FEC's failure to act on the excessive-contributions claim in the FEC complaint. ECF Nos. 16, 16-1. AB PAC opposes the motion. ECF No. 17.

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In resolving a Rule 12(b)(1) motion, while the Court is not limited to the allegations in the amended complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

## III.    Analysis

To sue in federal court, Article III of the Constitution requires a plaintiff to have standing. The "irreducible constitutional minimum of standing" consists of "three elements"—injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. The dispute here centers on whether AB PAC has adequately alleged an injury-in-fact—that is, an "invasion of a legally protected

3

interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"—at least for part of its operative complaint. *Id.* at 560 (cleaned up). The FEC does not dispute that AB PAC has suffered an informational injury that gives it standing to the extent that it seeks to challenge the FEC's failure to act on the disclosure claim in the FEC complaint.[1] In moving to dismiss in part, the FEC argues that AB PAC lacks an injury to the extent it seeks to challenge the FEC's failure to act on the excessive-contributions claim. As explained below, the Court agrees.

### A. AB PAC Must Have Standing to Support All the Relief It Seeks, Including Relief Relating to Its Excessive-Contributions Claim

The parties first dispute how to characterize the relief sought in the amended complaint. The FEC, for its part, construes the amended complaint as challenging its failure to act on both claims present in the FEC complaint—the disclosure claim and the excessive-contributions claim. ECF No. 16-1 at 13–14. Thus, the FEC argues, AB PAC must "establish standing for each administrative claim." ECF No. 18 at 9–11; *see also* ECF No. 16-1 at 13–14. AB PAC, on the other hand, contends that all it seeks is "an order directing the FEC to 'act on such [*FEC*] *complaint*' within 30 days—not any particular allegations therein." ECF No. 17 at 13–14. Thus, the argument goes, AB PAC's uncontested informational injury caused by the FEC's failure to act on the disclosure claim is enough to support standing to challenge the FEC's failure to act on the entire FEC complaint—including the excessive-contributions claim. *See id.* at 11–13.

But AB PAC's characterization of the amended complaint would require the Court to ignore exactly what it alleged in its FEC complaint. AB PAC alleged that Trump violated FECA in

---

[1] *See* ECF No. 18 at 9 n.1 ("FEC has not contested standing" on AB PAC's "disclosure claim."); *id.* at 14; ECF No. 17 at 11; *see also Env't Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) ("The law is settled that a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." (cleaned up)).

two discrete ways. *See* FEC Compl. 5–10; *compare* 52 U.S.C. § 30104, *with id.* § 30116. To redress one, AB PAC asks the FEC to compel disclosure of any expenditures "made to further Mr. Trump's candidacy." FEC Compl. at 11. To redress the other, AB PAC asks the FEC to "further investigate whether Mr. Trump has used his leadership committee to spend excessive funds to influence his own election." *Id.* And AB PAC now asks this Court both to declare that the FEC's failure to act on that complaint is contrary to law and to order the FEC to conform with its declaration. Under these circumstances, it is obvious that AB PAC is challenging the FEC's failure to act on, and seeks relief relating to, *both* claims in the FEC complaint. Moreover, AB PAC's argument that standing as to one claim somehow gives it standing to pursue the other cannot be squared with basic standing principles and this Circuit's case law.

FECA confers a right to file a petition in this District when the FEC dismisses or fails to act on an administrative complaint within 120 days. 52 U.S.C. § 30109(a)(8)(A). That said, "[h]aving the right to file an administrative complaint with the FEC does not necessarily give Plaintiff standing to seek judicial review of the disposition of that complaint in this Court." *Citizens for Resp. and Ethics in Washington v. FEC*, 799 F. Supp. 2d 78, 85 (D.D.C 2011). This "right to sue simply provides a mechanism for otherwise-injured parties to obtain congressionally mandated action." *Campaign Legal Ctr. v. FEC*, 860 F. App'x 1, 5 (D.C. Cir. 2021) ("*CLC*"). Thus, the Circuit has cautioned, "Section 30109(a)(8)(A) 'does *not* confer standing; it confers a right to sue upon parties who otherwise *already have standing*.'" *Id.* at 4 (emphases added) (quoting *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Circ. 1997)). A plaintiff "cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law" under § 30109(a)(8)(A). *Common Cause*, 108 F.3d at 419. Rather, a plaintiff must "demonstrate a 'discrete injury' flowing from the alleged violation of FECA." *Id.*; *see also CLC*, 860 F. App'x at 5

(reaffirming "the Article III requirement that alleged statutory violations must cause concrete injury to the plaintiff").

Moreover, any injury a plaintiff alleges for standing purposes must correspond to her requested relief, for a plaintiff has standing to pursue a claim only for which she "allege[s] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed *by the requested relief*." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (emphasis added) (quotation omitted). Ultimately, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury" because "'standing is not dispensed in gross.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 354 (2006)); *see also id.* at 1930 ("[A] plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'" (quotation omitted)). Thus, to evaluate standing, courts must "consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. at 2115.

Applying these principles here, the FEC's alleged failure to act on AB PAC's FEC complaint does not by itself provide AB PAC standing to sue over anything. *CLC*, 860 F. App'x at 4. And *Common Cause* and *CLC* teach that for a plaintiff to challenge the FEC's failure to act on an alleged FECA violation, she must establish an injury flowing from that violation. *See Common Cause*, 108 F.3d at 419; *CLC*, 860 F. App'x at 5. Thus, a claim related to a FECA violation for which AB PAC *cannot* show such injury must be dismissed for lack of standing. Put another way, a court may grant relief only "to the extent" that it has jurisdiction on a given claim. *See, e.g.*, *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 371 (D.D.C. 2012) (granting motion to dismiss certain claims only "to the extent" they were unripe). The Court would have no jurisdiction to order any relief—including declaring that the FEC's failure to act was

contrary to law—relating to the FEC's failure to act on an alleged FECA violation for which AB PAC cannot show injury.[2]

### B. AB PAC Has Not Established an Injury to Support Standing on its Excessive-Contributions Claim

The FEC then argues that AB PAC lacks an injury sufficient to support standing on its excessive-contributions claim. ECF No. 16-1 at 13–19. AB PAC responds that it has both a competitive and informational injury related to the excessive-contributions claims. *See* ECF No. 17 at 14–19. AB PAC fails to establish either.

#### 1. AB PAC Has Not Suffered a Competitive Injury

"The doctrine of competitor standing . . . [recognizes] that economic actors 'suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition' against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998)). In discrete contexts, courts have extended competitor standing to the political marketplace. *See Shays v. FEC*, 414 F.3d 76, 83–89, 92 (D.C. Cir. 2005) (candidates); *Nat. L. Party of U.S. v. FEC*, 111 F. Supp. 2d 33, 45–46 (D.D.C. 2000) (political parties); *but see Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (holding that a plaintiff PAC could not "claim standing as a 'competitor'" of a political campaign for a claim that "[o]nly another candidate could make."); *Herron for Cong. v. FEC*, 903

---

[2] Plaintiff argues that in *Campaign Legal Center. v. FEC*, 31 F.4th 781 (D.C. Cir. 2022), the Circuit "held that a plaintiff had standing to pursue its enforcement action against the FEC alleging that the FEC had improperly dismissed the plaintiffs' administrative complaint based on informational injury alone, despite that the administrative complaint, like this one, alleged that a PAC (1) failed to disclose certain information on FEC reports, *and* (2) made excessive contributions." ECF No. 17 at 14. Not so. The specific question raised by the FEC here—whether a plaintiff must have independent standing to pursue relief for the FEC's failure to act on a claim in its administrative complaint even if informational injury provides the plaintiff standing to pursue a separate disclosure claim in that same complaint—was not presented to or decided by the Circuit (or the district court) in that case.

F. Supp. 2d 9, 17 (D.D.C. 2012) (rejecting plaintiff's argument that competitor standing exists for "any individual who envisions a potential run for office in the undefined future").

Invoking the competitor-standing doctrine, AB PAC argues that it has suffered an injury because it is Trump's competitor, and so the FEC's inaction on his alleged violations has put it at a "competitive disadvantage." *See* ECF No. 17 at 15–16. Specifically, it argues the FEC's inaction "has distorted the competitive environment by allowing Mr. Trump to flout campaign finance laws without consequence," including by allowing him to "unlawfully amass more money from individuals and aligned PACs while soliciting unlimited funds for Super PACs that support his candidacy." *Id.* AB PAC's argument falls flat. No court has ever extended competitor standing to cover PACs, like AB PAC, that seek to enforce political candidates' (or even other PACs') compliance with campaign-finance laws. And AB PAC does not show why this Court should be the first.

AB PAC begins by arguing that "*any* participant in the political arena with 'concrete interests' can be a political competitor of a candidate." ECF No. 17 at 16 (emphasis added) (quoting *Shays*, 414 F.3d at 86). But neither case cited by AB PAC stands for that sweeping proposition.

AB PAC relies most heavily on *Shays*. There, the Circuit applied the doctrine of competitor standing to the political marketplace, but it made clear only that *candidates* could establish such standing to protect their own concrete interests in election or reelection.[3] Far from extending the competitor-standing doctrine to "any participant in the political arena," *see* ECF No. 17 at 16, *Shays* reinforced the Circuit's earlier rejection of a PAC's competitor-standing argument. In that

---

[3] *See Shays*, 414 F.3d at 87 (Those "defending concrete interests," such as "retention of elected office" during "a reelection race," "suffer legal harm under Article III."); *id.* at 83 (noting plaintiff members of Congress had standing in part because they are "candidates," and "who suffers more directly [than candidates] when political rivals get elected using illegal financing?").

case—*Gottlieb*—the court held the plaintiff PAC could not "claim standing as a 'competitor' of the [Bill] Clinton campaign because it was never in a position to receive matching funds itself"; "[o]nly another *candidate* could make such a claim." 143 F.3d at 621 (emphasis added). Later, in *Shays*, the Circuit clarified that, "unlike the *Gottlieb* plaintiffs," the *Shays* plaintiffs, who were members of Congress running for reelection, "clearly [did] face genuine rivalry from candidates and parties 'in a position,' . . . to exploit FEC-created loopholes." *Shays*, 414 F.3d at 87 (quoting *Gottlieb*, 143 F.3d at 621). As discussed more below, AB PAC has not alleged that it has been deprived of the benefit—the FEC's nonenforcement of excessive-contributions laws—that it says Trump received. Thus, AB PAC is not similarly "in a position" to be harmed by the FEC's non-enforcement. *See Gottlieb*, 143 F.3d at 621; *Shays*, 414 F.3d at 87.

AB PAC also cites *Natural Law Party*, but that case does not help it either. There, the court extended competitor standing to political parties. *See* ECF No. 17 at 16 (citing *Nat. L. Party*, 111 F. Supp. 2d at 45–47). The plaintiffs, a political party and its presidential and vice-presidential candidates, had "directly competed for the alleged benefit of participating in the presidential debate." *Nat. L. Party*, 111 F. Supp. 2d at 47. The plaintiffs were thus "direct 'competitors' of the Republican and Democratic parties and their nominee," and so they were "unlike the plaintiffs in . . . *Gottlieb*." *Id.* But again: AB PAC does not "directly compet[e]" with Trump. *See id.*

The exact holdings of those cases aside, as the above discussion reflects, AB PAC has not shown that competitor standing makes sense here. To invoke competitor standing, a plaintiff must "show that he *personally* competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit[,] . . . [f]or '[o]nly then does the plaintiff satisfy the rule that he was *personally* disadvantaged.'" *Gottlieb*, 143 F.3d at 621 (emphasis added) (citations omitted). Thus, that the candidate whom AB PAC plans to support in the 2024 presidential election

9

may suffer a fundraising disadvantage relative to Trump because of the FEC's inaction on its excessive-contributions claim is of no moment; AB PAC has not shown that *it* has been disadvantaged. *See* Am. Compl. ¶ 18. AB PAC tacitly concedes that its purported injury is in truth one suffered by the eventual Democratic candidate for president. *See* Am. Compl. ¶ 3 ("Trump's . . . acceptance of unlawful contributions provides him with a competitive edge *over the Democratic candidate* in the 2024 presidential election." (emphasis added)). The competitor-standing doctrine simply does not allow AB PAC to stand in the shoes of the eventual Democratic nominee to seek relief for FECA violations committed by the nominee's potential opponent.

Grasping at straws, AB PAC asserts that even if it does not compete with Trump, it has competitor standing because it competes with PACs that support Trump. *See* ECF No. 17 at 17 ("AB PAC has competitor standing because the FEC's failure to act on its complaint directly benefits rival PACs like Save America and rival Super PACs like Make America Great Again, Inc."); Am. Compl. ¶¶ 32–34 (alleging same). It doesn't. No court has ever extended the political competitor-standing doctrine beyond political candidates and parties in that way, either. And for good reason. These rival PACs are not parties to which AB PAC alleges the government supposedly provided an unlawful benefit, which is required for competitor standing: AB PAC's allegations are against Trump alone.[4] No doubt, AB PAC and its rival PACs are competitors in some sense, but they do not compete in the political marketplace directly against candidates. Nor, for that matter, do they compete directly against each other in the same way candidates do.

---

[4] Moreover, AB PAC "cannot expand the scope of [its] administrative complaint" when responding to a motion to dismiss. *See Citizens for Resp. & Ethics in Washington v. FEC*, 363 F. Supp. 3d 33, 40, 42 (D.D.C. 2018).

### 2. AB PAC Has Not Suffered an Informational Injury on its Excessive-Contributions Claim

Finally, AB PAC repackages its informational injury relating to its disclosure claim, arguing that it is enough to support standing on its excessive-contributions claim. Not even close.

AB PAC argues that "[b]ecause Mr. Trump failed to make the disclosures required by law, AB PAC cannot accurately track Mr. Trump's contributions. This amounts to the same comprehensive informational injury [applicable to AB PAC's disclosure claim]." ECF No. 17 at 19. AB PAC misses the point. The parties do not dispute that AB PAC has an informational injury caused by Trump's alleged failure "to report his campaign expenditures as required by [FECA] and [FEC] regulations." FEC Compl. 8–11; *see* ECF No. 18 at 14. But the disclosure claim and excessive-contributions claim allege two discrete FECA violations. For all the reasons explained, AB PAC cannot show an injury-in-fact stemming from Trump's purported receipt of excessive contributions. That the information AB PAC seeks to obtain through its disclosure claim might shed light on the merits of its excessive-contributions claim does not affect that conclusion.

### IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Defendant's Partial Motion to Dismiss Amended Complaint, ECF No. 16, is **GRANTED**. It is further **ORDERED** that Plaintiff's amended complaint, ECF No. 14, is **DISMISSED IN PART** to the extent that it seeks any relief relating to Defendant's failure to act on Plaintiff's excessive-contributions claim set forth in its administrative complaint.

**SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: July 17, 2023